### George C. Bandy, Appellee, v. Litchfield & Madison Railroad Company, Appellant.

#### (Not to be reported in full.)

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed July 21, 1915.

#### Statement of the Case.

Action by George C. Bandy, plaintiff, against the Litchfield & Madison Railroad Company, in the Circuit Court of Madison county, to recover for personal injuries sustained by plaintiff by reason of the negligent operation of a motor car on which he was riding. From a judgment for plaintiff for $1,000, defendant appeals.

The case of *Schmidt v. Litchfield & M. R. Co.,* 179 Ill. App. 533, was a suit by witness Alois Schmidt, who was one of plaintiff's bridge gang, to recover for injuries received in the same accident, and a verdict for plaintiff in that action was reversed by this court as manifestly against the weight of the evidence. This case has previously been before this court on appeal from a judgment for plaintiff, which was reversed for the same reason as in the *Schmidt* case, *supra,* see 183 Ill. App. 492.

The declaration consisting of three counts which were substantially the same, charged that on May 23, 1910, the plaintiff, at the special request of defendant, and while in its employ, was taken upon a motor car operated by the defendant to be hauled upon defendant's railroad from his place of work at a bridge near Madison to Edwardsville, and the defendant, by its servant Clarence Bickle, negligently operated said motor car; that while it was passing along said railroad near a bridge or trestle, the motor car ran against a dog upon the track of said railroad and was derailed,

whereby the plaintiff was thrown upon said railroad track and injured.

It appeared that on May 23, 1910, the plaintiff was at work for the defendant upon a bridge near Madison, acting as foreman of the bridge gang, and arranged with Clarence Bickle, who operated a motor car for the defendant, and resided at Edwardsville, to come with the motor car at the close of the day's work and haul the plaintiff and his bridge gang to Edwardsville; that Bickle at the appointed time came to the bridge and took plaintiff and his associates upon the motor car and started for Edwardsville, running at a rate of speed variously estimated at from eighteen to twenty-five miles per hour; between Edwardsville and Madison and about five miles north of Madison its railroad crosses a bridge or trestle over Cahokia Creek, and as the motor car came to the trestle it struck a dog, and the car was derailed and plaintiff was injured.

It also appeared that the dog that was killed by this motor car belonged to a man by the name of Bowen, and was first seen at the side of the track and some distance from this trestle. All of the witnesses seemed to agree that the dog was killed upon the trestle, and at about five or six feet from the end of the trestle.

Alois Schmidt, who was also injured, testified that he noticed the dog jump upon the track about one hundred feet away from the trestle, and that he drew Bickle's attention to that fact, and told him: "Better stop the car because we are in danger." Bickle said: "Watch me knock that dog, etc.," and that the car was then running about thirty-five miles an hour; that he felt Bickle raise the speed of the car. William Schmidt testified that he saw the dog running along the track and said: "Look out there Mr. Bickle you are going to hit that dog" and he turned around and said: " 'Watch me hit this dog, etc.,' and just then the dog ran along the track, I guess about seventy feet, two rail lengths; the dog ran along the side of the track

and I cautioned him again and turned back to Mr. Bandy, and just then I turned to look around and I seen the dog run on the ties of the bridge, etc.''; and on cross-examination this same witness said: ''We were two hundred yards or more from the trestle when he (the dog) left the men. He went a pretty good speed towards the track up the hill. He came in a gallop, all the way along the track. He was about seventy feet or more from the trestle when he came to the track; then our car was about thirty feet from him. The dog was not more than ten feet away from the track when I called Mr. Bickle's attention to it. When he got up to the tracks, he just galloped right along side of the track up to the trestle, when he made one hop on the trestle and started in a kind of trot and fell between the ties and throwed his head over the rails. When the dog jumped on the trestle our car was about eight feet from him.''

Another witness, Barney Russel, called by plaintiff, testified that just before the accident the dog was on the side of the track, the car being on the south side of Bowen and the boys. Witness did not see the dog again until he got to the trestle. Plaintiff had no recollection of seeing the dog. Alois Schmidt was the only witness who saw the dog on the track in front of the car before reaching the trestle. Schmidt made a statement to Dr. Ferguson, who testified: ''On the evening of the accident Mr. Alois Schmidt said to me at that time and place that some men there on the side of the track were holding the dog, and that the dog got away from them and jumped under the car, and nobody could avoid striking it,—or a statement to that effect. He also said at that time that the dog sprang out from where these men were and jumped under the car and nobody could avoid striking it. He also said at the same time and place that this was purely an accident and that Mr. Bickle was not to blame in any way.'' The doctor further states that on the next

morning after' the accident Alois Schmidt told him substantially the same thing.

Witness Taylor, for defendant, testified that he first saw the dog five or six feet from the trestle, and heard no statement by Schmidt to Bickle about striking the dog. Bowen, the owner of the dog testified that a second or two before the accident the dog was with him at a distance from the track fixed at about sixty feet by the witnesses, and the next he knew the car was running over the dog. Bowen was substantially corroborated by two witnesses. Bickle testified as follows:

"When within five or six feet of the trestle I saw the dog running along the right-hand side of the track; he was bounding up on top of the trestle just in front of the side of the car. I had not seen the dog before that. When I first saw him I think he was running as fast as he could run in a northerly direction; about the first bound he made on the bridge his forefeet went up and his rear parts fell over the rail and the car struck him." Witness also said that he built this car out of an old automobile, and that its maximum speed was twenty-two to twenty-three miles per hour, and denied that the Schmidts said to him to look out that he was going to hit the dog, or anything to that effect.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

C. H. BURTON, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

### Abstract of the Decision.

1. MASTER AND SERVANT, § 697*—*when evidence insufficient to sustain verdict.* In an action to recover for personal injuries sustained by plaintiff while riding on a railroad motor car as a result of the

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

car being derailed by striking a dog, where the evidence tended to show that the dog jumped suddenly on the track in front of the car and was struck before there was time to check the speed of the car, a verdict for plaintiff *held* manifestly against the weight of the evidence.

2. APPEAL AND ERROR, § 1802*—*when judgment reversed second time because against weight of evidence, not remanded.* In an action to recover for personal injuries, where a previous judgment for plaintiff has been reversed by the Appellate Court as manifestly against the weight of the evidence, and where in another action growing out of the same accident a judgment for plaintiff has been reversed for the same reason, a judgment for plaintiff in a second trial, when reversed for a similar reason, will not be remanded.