Edith Yelinich and Martin Yelinich, Plaintiffs-Appellees, v. John Capalongo, Defendant-Appellant.

Gen. No. 48,591.

First District, First Division.

December 10, 1962.

200

Richard C. Bleloch and Robert A. Wiacek, of Chicago, for appellant.

George A. Beck and Helmut A. Fydrych, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Plaintiffs brought this action in the Municipal Court of Chicago to recover damages for personal injuries and property damage sustained by them following an automobile accident. The complaint charged defendant with both negligence and wilful and wanton misconduct. The jury returned a verdict for $500 in favor of plaintiff, Edith Yelinich, and for $2,000 in favor of plaintiff, Martin Yelinich. Judgment was entered on the verdicts and defendant appeals.

The accident occurred in the early afternoon of August 28, 1955, at the intersection of 26th Street and Hamlin Avenue in Chicago. Edith Yelinich was a passenger in an automobile driven by her husband in a westerly direction on 26th Street, a four lane thoroughfare. Defendant was travelling in a southerly direction on Hamlin Avenue, which has two lanes of traffic. It was a clear, sunny day, the streets were dry, and the intersection where the accident occurred was controlled by red, amber, and green traffic lights. Martin Yelinich testified that he was driving in the lane nearest the curb at a speed of 18 to 20 miles per hour and when he was 40 to 50 feet from the intersection he noticed the traffic light turn green. It re-

mained green when he entered the intersection and as he approached the middle of the intersection, his car was struck by defendant's automobile. He did not see defendant until immediately before the impact when his wife screamed. After the impact, the Yelinich car made a "U turn" and came to a stop after striking another car parked at the northwest corner of 26th Street. The testimony of Edith Yelinich was substantially the same as that of her husband. She first noticed the green light when they were 25 to 30 feet from the intersection. She stated she was looking straight ahead; the light remained green as they entered the intersection, and "before I know, we got crashed with his car, . . . demolishing the whole center of our car."

Defendant, called as a witness by plaintiffs, under Section 60 of the Civil Practice Act, testified that he was the owner of a 1949 Kaiser which he had owned for about two years, and on the day in question he was travelling in a southerly direction on Hamlin Avenue on his way to work. He stated he was 10 to 25 feet from 26th Street when he noticed the light was green. He was then going 18 miles per hour. The light was still green when he approached the intersection and he reduced his speed to 10 miles per hour. He said he first saw plaintiffs when he was on top of them and he slammed on his brakes, but his car struck the center of plaintiffs' automobile. He estimated plaintiffs' speed to be 40 miles per hour. His estimate was based on the sound of the impact when the cars collided. Defendant's testimony at trial was at variance with the testimony he had given in a deposition taken March 27, 1956. At trial he testified he drove this way to work every day while his testimony in the deposition was that he had not been on this street before. Although he stated at trial that he was going 10 to 18 miles per hour, his deposition stated his speed

to be 25 miles per hour. Further conflicts appeared in defendant's testimony when he testified in his own behalf. While his original testimony was that he had not seen plaintiffs' automobile until the impact, his later testimony was that he first saw plaintiffs when they were 30 feet from the intersection and he was 15 feet from the corner. The deposition placed plaintiffs' vehicle 25 feet from the intersection when he first saw the car. In addition, plaintiffs' counsel brought out in cross examination that defendant had testified in the deposition that he had stopped for a red light at 26th Street. Finally, defendant's testimony conflicted over whether or not he wore glasses at the time of the accident. The deposition testimony was that he had had glasses on at the time of the accident and that a lens was broken in the accident. At trial he denied he needed glasses at the time of the accident; his testimony was that he did not begin to wear glasses until after the accident.

Although defendant denied making some of the statements in the deposition, the court reporter who recorded the deposition testified that the questions and answers appearing in the deposition were true and correct. The trial judge commented in chambers that the defendant was definitely lying and he told defendant's counsel he was seriously considering holding defendant in contempt of court for possible perjury. Defendant's counsel attempted to justify the inconsistencies in defendant's testimony by insisting that defendant had suffered a hearing injury in the accident and did not hear or understand many of the questions. The trial judge replied that the defendant knew what the questions were because he kept repeating the questions before he gave his answers.

Elmer Malmborg, a resident of the neighborhood where the accident occurred, testified for the defense. He stated he was attempting to walk across 26th Street

at Hamlin Avenue when he saw plaintiffs' car approaching the intersection. He estimated their speed to be 35 miles per hour. When he got to the center of 26th Street, he noticed that plaintiffs did not appear to be slowing down even though, according to his testimony, they had a red light. He then stated he backed away from the middle of the street and watched plaintiffs' car go through the red light and collide with defendant's automobile. On cross examination he testified he gave his name to the officer who investigated the accident, but was not asked any questions. He further stated he had not given his name to anyone else at the accident. When asked how he was contacted to testify, he stated that an insurance company had contacted him about three months after the accident.

The police officers who investigated the accident were then called by plaintiffs and they testified that they had not taken the names of any witnesses to the accident. They further stated that the normal accident investigation procedure is to take statements from witnesses. Both police officers saw Malmborg at trial, but even though he had an artificial (wooden) leg and walked with a cane, neither officer could recall ever seeing Malmborg before the trial.

The defendant contends he was entitled to a directed verdict at the close of plaintiffs' evidence. On this motion we may properly consider the single question, whether there is in the record any evidence which, standing alone and taken with all intendments most favorable to plaintiffs, tends to prove the material elements of their case. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847. It is clear from the evidence that the jury was asked to determine the issue of whether or not the defendant drove into the intersection against a red light, thereby proximately causing the injuries and damages sustained by plaintiffs. The

testimony of both plaintiffs was that they had a preferential right of way by reason of the green light. If this testimony were accepted as true by the jury then defendant did not have the right of way. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293. Defendant's testimony, in addition to the internal inconsistencies, conflicted with that of plaintiffs'. It is the sole function of the jury, as a fact finding body, to determine where the truth lies in conflicting testimony. Both the jury and trial judge saw and heard the witnesses and by the jury's verdict and the ruling of the trial judge on post trial motion, we can only conclude that the testimony of the plaintiffs was the only evidence worthy of belief. If so, the plaintiffs had the right to proceed through the intersection and we cannot say the motion for a directed finding was improperly denied.

Defendant stresses the fact that the only impartial witness to the accident testified on his behalf. We must bear in mind that the jurors and trial judge observe the appearance of a witness, his or her manner of testifying, and other circumstances that greatly aid in determining the credibility of a witness and the weight, if any, that should be given to his or her testimony. There are many things the jury and trial judge observe during a trial that do not appear in the printed record to support their conclusions. As we stated previously, it is the jury's function to resolve conflicts in testimony.

■ Defendant argues that the plaintiffs were guilty of contributory negligence as a matter of law. This contention is based on plaintiffs' testimony that they proceeded through the intersection without slowing down and did not see defendant until the impact even though there was no traffic to obscure their vision. Inasmuch as the complaint charged defendant with wilful and wanton misconduct in addition to or-

205

dinary negligence, and the jury, in answer to special interrogatories, found defendant guilty of wantonness, the question of contributory negligence, if any, has no part in the case. Green v. Keenan, 10 Ill App2d 53, 134 NE2d 115.

██ It is defendant's next contention that the submission of special interrogatories on the question of wilful and wanton misconduct was error. Interrogatories were submitted to the jury concerning the wilful and wanton conduct of both plaintiffs and defendant. The jury answered in the affirmative as to defendant alone. The cause went to trial on a complaint which duly alleged wilful and wanton misconduct and whether negligent conduct amounts to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as to indicate a wilful disregard of consequences or a willingness to inflict injury. Layton v. Ogonoski, 256 Ill App 461.

██ In order to constitute wilful and wanton misconduct, the act must have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a disregard for the safety of others. Robertson v. New York Cent. R. Co., 388 Ill 580, 58 NE2d 527. Control lights are installed to give a preferential right of way to motorists having the green light. Uniform Traffic Act, art III, sec 129, Ill Rev Stats c 95½, § 129. One purpose of this statute is to prevent injuries. Persons having the green light may assume the intersecting traffic will stop until the light for them turns green. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of wanton conduct. Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980.

In our opinion, whether defendant was guilty of wilful and wanton misconduct was a proper question for the jury. Bernier v. Illinois Cent. R. Co., 296 Ill 464, 129 NE 747; Streeter v. Humrichouse, 357 Ill 234, 191 NE 684; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293; 331 Ill App 143, 72 NE2d 705. The jury could have found here, from the conflicting testimony of defendant, the testimony of plaintiffs and the physical location of the cars at the time of the impact, that defendant, either knowingly or with conscious indifference, drove his car through a red light in a built up business area and crashed broadside into plaintiffs' car. At the very least, the testimony at trial raised a genuine issue of fact as to wilful and wanton misconduct which was properly submitted by the trial court to the jury.

 The defendant also complains that the court erred in admitting the automobile repair bill and a copy of an estimate in evidence without proof to connect the bill with the repairs, except for the general statements made by plaintiff, Martin Yelinich. The evidence disclosed that the front door of plaintiffs' new car was caved in from the front wheel to the second door and that the car had to be towed away from the scene. Defendant's own testimony supported that of plaintiffs as to the nature of the damage. The car was repaired by Kalina Motor Sales. Exhibit one consisted of a paid bill in the amount of $560.77 and attached to it were three sheets consisting of itemized estimates of repairs and a recapitulation of the items. Defendant objected to their being received in evidence on the grounds there was no testimony to connect the estimate with the damage caused by the accident. The paid repair bill recites "repair as per estimate." The evidence disclosed that plaintiff was driving a five day old 1955 Oldsmobile Eighty-Eight with only 123 miles on it. Plaintiff further testified the car had not been in any other accident. It appears that defend-

ant's real concern, in the lower court, was the fact that plaintiff had paid only $50 of the repair bill and that his collision insurance carrier paid the balance and that therefore plaintiff was not entitled to claim the full amount. This contention was made in Byalos v. Matheson, 328 Ill 269, 159 NE 242, and the Supreme Court had this to say: "The insurance company did not make the payment for the benefit of the appellant and the payment did not discharge the appellee's right of action against him." The court also held that proof of payment of a repair bill was "prima facie sufficient and it was not error to admit the bill in evidence." 328 Ill at p 272. The defendant had a right to cross examine the plaintiff on this question or to offer evidence in opposition which he didn't do.

■ Defendant's final contention is that the damage awards are too high in view of the fact that plaintiffs paid only $4.00 in medical expenses. Plaintiffs were 51 and 62 years of age at the time of the accident, and both testified that in addition to cuts and bruises, they suffered painful back and arm injuries. The only rebuttal testimony offered by defendant as to the nature and extent of plaintiffs' injuries was the testimony of defendant himself and the witness Malmborg. Both testified that they watched plaintiffs walk around after the accident and that they appeared to be all right. Taking into consideration the extent of damage to the car, the nature of the accident, the age of the plaintiffs, and the testimony as to the injuries, we cannot say the award was excessive or the result of passion or prejudice.

We are of the opinion that this record contains no reversible error and accordingly the judgment of the trial court is affirmed.

Affirmed.

MURPHY and ENGLISH, JJ., concur.