(No. 38835.—
RAYMOND CARTER, Appellant, *vs.* ZULA WINTER *et al.,*
Appellees.

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

ROBERT WEINER and LONDRIGAN & LONDIGRAN, both of Springfield, (JOSEPH A. LONDRIGAN, of counsel,) for appellant.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING and ALFRED F. NEWKIRK, of counsel,) for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This is an appeal from the judgment of the Appellate Court for the Fourth Judicial District (50 Ill. App. 2d 467, 200 N.E.2d 528) which reversed without remandment a judgment of the circuit court of Sangamon County entered on a jury verdict for plaintiff assessing his damages at $100,000 for injuries arising out of an automobile accident. The verdict was reached in a second trial necessitated by the inability of the jury in the first trial to agree.

Plaintiff, appellant herein, contends that constitutional infirmities arising for the first time in the Appellate Court warrant appeal to this court as a matter of right. (Ill. Const., art. VI, sec. 5; 28 Ill.2d xxxiii.) Appellant has also complied with time limitations prescribed for petitions for leave to appeal. 28 Ill.2d xxxi.

The opinion of the Appellate Court states it found sufficient evidence favoring the plaintiff to prevent the direction of a verdict for defendants. It also finds the verdict was against the manifest weight of the evidence as to plaintiff's contributory negligence and that the proof was "totally inadequate" to establish a causal connection between the injuries sustained by plaintiff and his subsequent heart attack. There is manifest inconsistency between these findings, particularly in view of the Appellate Court's reversal with-

out remandment. Since the presence of constitutional questions is dependent upon the interpretation to be given the Appellate Court opinion, and since the appellant has complied with the time limitations applicable to petitions for leave to appeal, we have elected to treat this as an allowed petition for leave to appeal.˙ See Supreme Court Rules 28 and 32 as amended Dec. 2, 1963, effective Jan. 1, 1964; 2 I.L.P. Appeal and Error, par. 8.

For convenience, we set forth the Appellate Court's substantially correct statement of facts, modified where necessary: The accident occurred on December 18, 1960, at about 3:00 o'clock P.M. on U.S. Route No. 66, a short distance north of Springfield, Illinois. The weather was clear and cold, and the pavement was dry. The highway at the point of collision is four-laned, each lane being 10 feet in width, with two lanes for northbound traffic and two lanes for southbound traffic. There is no median strip or separation of the two inner lanes other than a center line on the pavement. The highway is concrete.

Plaintiff, Raymond Carter, with his wife in the front seat with him and their small child standing behind them, started from his home which is a short distance east of the highway, and drove his automobile on a private driveway to U.S. 66. His testimony and that of his wife was that he stopped just before he entered the highway, then drove directly across the two northbound lanes, and the inner lane of the southbound lane, until he entered the outer southbound lane and there he turned to the left and proceeded down the outside southbound lane at a speed of about 35 miles per hour until he was struck in the rear by the automobile owned by defendant Zula Winter, and driven by defendant Theresa Hoenow. The left rear corner of Carter's automobile was struck by the right front corner of the Winter automobile. The collision knocked the Carter automobile down the road until it was braked to a stop by the driver. The Winter automobile stopped about the point of

impact. Carter said he saw the Winter car when he was about 30 feet east of U.S. 66, and estimated it was then about 400 yards to the north. He said he continued to watch the Winter car as he drove across U.S. 66 and until he made his turn and headed south. His estimate was that he traveled 120 to 130 feet in the southbound lane until the collision. On cross-examination, he admitted that he last saw the Winter car through the right front door, as he turned into the westernmost lane, and that it was a distance of about 30 to 40 yards away and traveling 75 or 80 miles per hour. Mrs. Carter in her testimony estimated the Winter car to be three to four hundred yards away when the Carter car stopped on the east side of the highway. Mrs. Carter testified she was knocked out for a few seconds and when she regained consciousness, she was sitting in the front seat with her husband sitting beside her holding the steering wheel. Mrs. Carter was not seriously injured and apparently the child in the back was not injured. Raymond Carter, immediately after the accident, went across the highway to his brother Luke Carter's home to get his brother and then went back to the scene of the accident. Neither Raymond Carter, his wife nor his son went to the hospital. The next day Raymond Carter returned to his regular work in the mill of Luke Carter. The following day he drove the mill truck to Arkansas and was gone about four days. About a week after the accident, he helped rope and load a 200-pound hog into the truck. On the eleventh day after the accident, plaintiff Raymond Carter had a heart attack and while in the hospital had several strokes which resulted in partial paralysis and total disability. Plaintiff's action was based on the claim that the injuries sustained in the collision caused the heart attack.

Defendant Theresa Hoenow, an employee of Zula Winter, was driving the Winter car. Riding beside her in the front seat was Mrs. Winter's brother, Ellsworth Brown. Mrs. Winter was in the back seat, but her eyesight was such

that she was almost totally blind and could not see what was happening. Both Mrs. Hoenow and Mr. Brown estimated the speed of the Winter car at 50-55 miles per hour before the brakes were applied. Mrs. Hoenow testified she first saw the Carter car when it was crossing the inner southbound lane. She estimated the distance at between 100 and 125 feet. She attempted to pull to the left, but was unable to do so and, when the collision occurred, the Winter car was straddling the dividing line between the two south-bound lanes.

Ellsworth Brown testified he first saw the Carter car when it was crossing the two inner lanes. It was then about 100 to 125 feet away. This witness testified that the Carter car came across the two lanes and then turned into the lane in which the Winter car was traveling south. This witness stated he had observed the posted speed limits from time to time and Mrs. Hoenow was driving within the speed limits.

Illinois State highway policeman James Merrifield was called to the scene of the accident and arrived shortly after it happened. He testified he found skid marks made by the Cadillac of Mrs. Winter and these marks were 112 feet in length. He stated the point of impact was 169 feet south of the line of the Carter driveway extended across the highway, and that he made the latter determination some three years after the accident from pictures introduced as exhibits and his recollection of the occurrence.

Luke Carter, brother of the plaintiff, testified he saw the Winter automobile 1000 feet away, watched it and his brother's car, and saw the accident. He saw this through a window in his home, seated about two feet from the window. He estimated the speed of the Winter car at 80 miles per hour. He estimated the speed of the Carter car just before the collision at 35 miles per hour. Although Luke Carter testified he saw the accident, and knew it was his brother's car which was struck, it does not appear that he left the house, but stayed inside until his brother came back across

the road to enlist his help. In answers to pretrial interrogatories and deposition questioning, Raymond Carter stated his brother, Luke, was a post-occurrence witness and did not see the accident.

Alexander Langsdorf, a witness for the plaintiff, testified as an expert on the co-efficient of friction between tires and dry concrete pavement, or in other words, skid marks and their distances. This witness was asked a long and complicated hypothetical question and his testimony was that under the facts as posed by the hypothetical question, the accident could not have happened, basing his answer on the testimony of Mrs. Hoenow that at the time of the collision she was traveling 30 miles per hour and the testimony of Carter that he was traveling 35 miles per hour. This witness stated that if the speed of the Cadillac was 70 miles per hour, the speed of the Cadillac at the time of impact would have been 47 miles an hour which would have caused a mild jolt. Basing his answer on a speed of 80 miles per hour by the Cadillac, the speed of the Cadillac at the time of the collision would have been 60 miles per hour. This witness also testified that if a person driving along the highway is struck in the rear by another vehicle, the person so struck would be thrown forward and not backward.

George Engelbach, a transport driver, testified he was driving north on U.S. 66 and saw the accident. He was driving in the outer northbound lane. He first saw the Carter car come from behind a fence on the east side of the highway and said it did not stop, but seemed to pick up speed as it entered the highway. This witness estimated the distance of the Cadillac from the Carter Mercury at 50 feet when the Mercury crossed the center of the highway. This witness stated the Cadillac was not exceeding the speed limit. When the witness stopped his transport, he was immediately south of the Carter driveway and the point of impact was opposite his trailer, about 50 feet south of the driveway. This witness stated unequivocally that Carter

did not stop before entering the highway, but that he seemed to be picking up speed, and that Carter was slanting across the highway to the southwest. He showed wet tire marks of the Carter car to the State trooper.

Much equivocal medical testimony was heard relating to the relationship between the accident and the heart attack eleven days later. While the Appellate Court held this proof "totally inadequate", it is unnecessary, in view of our ultimate conclusion, to consider this question or detail the testimony referring thereto.

We now come to a consideration of the substantive legal questions involved herein. Plaintiff urges the Appellate Court correctly found there was sufficient evidence to submit the case to the jury, and that the judgment of the trial court should be affirmed. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343.) Defendants say the judgment of the Appellate Court was correct even though the reasons therefor stated in the opinion may have beeen incorrect, and that its judgment should, therefore, be affirmed.

It is our opinion that only one facet of the case— the propriety of the ruling of the trial court's denial of defendants' motion for a directed verdict—requires consideration. A motion to direct a verdict presents a question of law reviewable on this appeal. (*Zank* v. *Chicago, Rock Island and Pacific Railroad Co.* 17 Ill.2d 473; *Heideman* v. *Kelsey,* 414 Ill. 453; *Seeds* v. *Chicago Transit Authority,* 409 Ill. 566.) The Appellate Court stated it found sufficient evidence to warrant submission of the case to the jury, but then proceeded to find a "total inadequacy" of proof of a causal relationship between the accident and the injuries, reversing the case without remandment, both the finding of lack of proof of proximate cause and the absence of a remanding order being incompatible with denial of a directed verdict. It also found the verdict against the manifest weight of the evidence on the issue of contributory negligence.

In determining whether defendants' motion for a directed verdict should have been allowed, all of the evidence, when viewed most favorably to plaintiff, must totally fail to establish one or more essential elements of the case. (*Ryan* v. *Deneen*, 375 Ill. 452; *Tucker* v. *New York, Chicago and St. Louis Railroad Co.* 12 Ill.2d 532.) That proof by plaintiff of his own exercise of due care is essential to recovery is elementary.

Plaintiff testified he initially viewed defendants' car from a stopped position about 30 feet east of the easternmost edge of the highway. At that time defendants' car was about 400 yards away, traveling in the westernmost lane of traffic. Plaintiff then proceeded across the highway, watching defendants' car approach. He stated he last saw defendants' car out of the right window as he turned south in the westernmost lane, and that it was then 30 to 40 yards away and traveling 75 to 80 miles per hour in the same lane into which plaintiff turned. While defendants maintain this testimony, standing alone, is a judicial admission of contributory negligence barring plaintiff's recovery, we have previously held (*McCormack* v. *Haan*, 20 Ill.2d 75) that while a party may, by his own testimony conclusively bar his claim or his defense, a determination that he has done so depends upon an evaluation of all of his testimony, and not just a part of it, as well as an appraisal of his testimony in the light of that of the other witnesses and a consideration of their respective opportunities to observe the facts about which they testify. McCormick on Evidence, pp. 513-516; 9 Wigmore on Evidence, 3rd ed., sec. 2594(a).

A consideration of the testimony of all of the occurrence witnesses is, however, of little assistance to plaintiff. While plaintiff, in his pretrial statements, said his brother Luke did not see the accident and knew nothing of it until told by the plaintiff, Luke testified at the trial that from his seat at the dining table in his home he saw his brother's car, which he recognized, approach and enter the highway and

watched the collision. Luke further testified he first saw defendant's car "one fourth of a mile," "about 1320 feet" away, and that from that point to the point of impact 5 or 6 seconds elapsed. In his opinion the defendants' car was traveling 70 miles an hour at the time of impact despite the fact that it was undisputed that the skid marks extended 112 feet northward from the collision point. It is clear that the facts as stated require from the Cadillac a speed of which no ordinary vehicle is capable. For it to travel 1320 feet in 6 seconds and strike plaintiff's auto would require a minimum constant speed of 150 miles per hour if plaintiff's car were standing still instead of moving in the same direction. The only apparently disinterested witness was the truck driver, Englebach, who was approaching from the south. He testified plaintiff did not stop before entering the highway, but drove across the highway in a slanting, southwesterly direction, and that the distance between the plaintiff's and defendants' cars at the time plaintiff crossed the center lane of the highway was about 50 feet. The testimony of Theresa Hoenow, the driver of defendants' car, and Ellsworth Brown, a passenger therein, was corroborative of that of the plaintiff as it related to the distance separating the vehicles at the time plaintiff crossed into the southbound lanes. Mary Carter, plaintiff's wife, and a coplaintiff at the time of trial, testified that she first observed defendants' car when plaintiff was stopped on the east side of the highway, and that it was then 300-400 yards away; that she continued to watch it as they crossed the highway, and that it was still 200-300 yards away when they turned south. She further stated they traveled 129-30 feet before being struck, and that their speed was 30-35 miles per hour at the timpe of impact. While she would make no estimate of the speed of defendants' car, it is apparent that the Cadillac must have traveled at an impossible rate of speed to cause the collision under the facts, distance and speeds as thus testified to.

In our judgment, plaintiff's own testimony that he

284

knowingly turned his comparatively slowly moving auto into the lane of traffic occupied by an approaching car then 120 feet or less away and traveling 75 or 80 miles per hour, when viewed in the light of the rest of his testimony and that of the other witnesses, conclusively establishes his guilt of contributory negligence as a matter of law. One cannot knowingly expose himself to danger and subsequently recover damages for an injury which, by the employment of reasonable precaution and circumspection, he might have entirely avoided. *Tucker* v. *New York, Chicago and St. Louis Railroad Co.* 12 Ill.2d 532; *Dee* v. *City of Peru,* 343 Ill. 36; *Illinois Central Railroad Co.* v. *Oswald,* 338 Ill. 270; *Wilson* v. *Illinois Central Railroad Co.* 210 Ill. 603; *Beidler* v. *Branshaw,* 200 Ill. 425.

Consequently, we hold that both the trial court and Appellate Court were in error concerning the denial of defendants' motion for a directed verdict, which should have been granted. It is, therefore, unnecessary to consider the other issues raised. However, since it is only the judgment of the Appellate Court and not its reasons therefor which determine affirmance or reversal, (*Robinson* v. *Workman,* 9 Ill.2d 420; *Harding Co.* v. *Harding,* 352 Ill. 417; *Little* v. *Blue Goose Motor Coach Co.* 346 Ill. 266) we affirm its ultimate determination.

The judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*