Flavia Mesich, Formerly Flavia Dire, Plaintiff-Appellant, v. Leland M. Austin, Defendant-Appellee.

Gen. No. 49,631.

First District, Third Division.

May 5, 1966.

John W. Daly, of Chicago, for appellant.

Donald J. O'Brien, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is a personal injury case arising from the collision of two automobiles at an intersection. At the close of all the evidence the court held that the plaintiff

was guilty of contributory negligence as a matter of law and directed a verdict for the defendant. The plaintiff appeals from the judgment entered on the verdict of not guilty.

The autos collided about 7 a. m. on a misty morning at the intersection of 31st Street, an east and west street, and First Avenue, a north and south street, in Riverside, Illinois. There were stop and go lights at the four corners. The plaintiff was on her way to work accompanied by a fellow employee. She was driving her car east on 31st Street and the defendant, who was also on his way to work, was driving south on First Avenue. The plaintiff testified that she was driving 25 miles an hour in the inner lane, that the traffic light was green for eastbound traffic and she looked both ways before she proceeded into First Avenue. Her car was struck on the left side near the driver's seat by the defendant's southbound auto. She lost consciousness and was taken to a hospital. She regained consciousness several hours later and remained in the hospital thirty days.

The defendant testified that the light was green for southbound traffic and that he was approximately one-half way across 31st Street when the plaintiff's car suddenly pulled around others that were stopped and entered the street from the lane closest to the curb. He said he turned his auto practically around in an attempt to avoid hitting the plaintiff's car. He further testified that he remained at the scene for half an hour and the light for southbound traffic remained green all this time. He said he talked with the plaintiff's coworker and asked her why they had run the red light and that she replied she didn't know but that they were late for work. The defendant's 13-year-old son was riding in the back seat. He was the only occurrence witness to testify. He was not asked about the light but in other respects he corroborated his father's testimony about

337

the plaintiff's car coming around other cars and entering the intersection from the outer lane.

Two police officers of the Village of Riverside arrived at the scene at 7:15 a. m. and remained there three or four minutes before taking the plaintiff to the hospital. They said that the lights at that time were red for eastbound and green for southbound traffic. One officer testified that they had reported that the lights were stuck on red for eastbound and green for southbound traffic at 3:15 a. m. The other said that a report about the lights not functioning properly had been received at the police station at 11 p. m. the night before and that another report came in around 4 a. m. in the morning. He said that he had informed the State police and the Meade Electric Company (a company that had a contract with the State to maintain the traffic lights) about the lights malfunctioning. The general foreman of the Meade Electric Company, however, who was also a defense witness, said he knew of no call to repair the faulty lights, that there was no such report, and if there had been a report his company would have had a record of it.

■ ■ The plaintiff sued both Meade Electric and Austin. Her complaint was in two counts. The count against Austin charged him with failing to keep a sufficient lookout, failing to yield the right-of-way and driving at an unreasonable speed. The count against Meade charged the company with negligently maintaining the lights. Meade was dismissed from the case before evidence was heard and we do not know the plaintiff's theory against that defendant. It could have been that the lights were out of order by being fixed at green for both east and southbound traffic at the time of the accident, thus inducing both her and Austin to proceed. The plaintiff's insistence that she had the green light indicates that her counts were not inconsistent, but even if they were she had a clear right to plead them in the

338

alternative (Ill Rev Stats, c 110, § 43(2) (1963)) and if they were inconsistent and had gone to trial the sufficiency of the proof to support each count would have had to be judged separately against a motion for a directed verdict. McCormick v. Kopmann, 23 Ill App2d 189, 161 NE2d 720 (1959). The same standard in testing the sufficiency of the proof would have had to be applied whether the counts were consistent or inconsistent. We speak of this because the count against the electric company might have been a factor in the trial court's decision to direct a verdict against the plaintiff despite her unequivocal testimony that she had the green light.

 In determining whether the plaintiff was contributorily negligent as a matter of law, the testimony favorable to the plaintiff (and in this case that means her own testimony) must be taken as true. It is obvious that the trial court decided it was untrue. In making this determination the court invaded the province of the jury; the truth or falsity of her testimony was for the jury to determine, not the court. Standing alone her testimony was sufficient to sustain a judgment in her favor. The conflicting evidence made the question of contributory negligence one of fact, not of law. If the court was of the opinion that the weight of the evidence preponderated in favor of the defendant (and we do not dispute that it did) it was not for the court to so rule. The court cannot weigh conflicting evidence in a jury trial. The weight to be given evidence, as well as the credibility to be given witnesses, is for the jury to determine.

██ ██ In intervening as it did in an adversary proceeding before a jury, the court transgressed three firmly established principles of Illinois law:

(1) the testimony favorable to the plaintiff must be regarded as true in determining whether there

339

is any evidence which tends to prove the material elements of the plaintiff's case;

(2) in a jury trial the credibility of the witnesses and the weight to be given their testimony is for the jury to determine;

(3) there should not be a directed verdict if there is any evidence, or reasonable inferences from the evidence, upon which a jury could base a verdict for the party against whom the motion is directed.

These principles have been restated in a great number of cases. Every judge who has sat in a court of review in this State for any length of time has had occasion to repeat one or all of them in his opinions.

■■ In most cases concerning directed verdicts for defendants the reviewing courts have the problem of deciding whether there is evidence in the record, or reasonable inferences to be drawn therefrom, which taken with intendments most favorable to the plaintiff supports his or her claim; for a party cannot be deprived of his right to a jury trial if he has made out a prima facie case. In the present case this problem does not confront us. The plaintiff's claim is supported by direct evidence: her positive testimony.

■ That the plaintiff might have been mistaken does not alter the standard by which her testimony is to be tested. And one cannot read her testimony in the record without being impressed with the sincerity of her belief that the light was green when she approached First Avenue. She saw the light turn green when she was a half-block away and she saw other eastbound cars in front of her cross First Avenue. Her speed was steady and she proceeded in a straight line until she was struck broadside without seeing or hearing any prior warning. She had the right to assume that it was

safe to proceed. In Yelinich v. Capalongo, 38 Ill App2d 199, 186 NE2d 777 (1962), the court stated:

> "Control lights are installed to give a preferential right of way to motorists having the green light. Uniform Traffic Act, art III, sec 129, Ill Rev Stats, c 95½, § 129. One purpose of this statute is to prevent injuries. Persons having the green light may assume the intersecting traffic will stop until the light for them turns green."

The only way we could affirm the judgment of the trial court would be to ignore past decisions and attempt to formulate new standards to be applied to motions for directed verdicts, judging the credibility of witnesses and the preliminary proof required in determining whether a plaintiff has proved the material elements of his case. It has been suggested that the Supreme Court opened the door for different standards in the case of Carter v. Winter, 32 Ill2d 275, 204 NE2d 755 (1965). We do not believe this was done. That case concerned a rear-end collision on a heavily traveled four-lane highway between the automobile of the plaintiff and that of the defendant. The question before the court was whether a verdict should have been directed for the defendant who ran into the plaintiff's auto. The court held that it should have been and that the Appellate Court and the trial court were in error in deciding otherwise, because the plaintiff's own testimony proved him guilty of contributory negligence as a matter of law. The plaintiff testified that he pulled from a side road onto the highway and into the path of the defendant's auto 30 or 40 yards away which was traveling 75 to 80 miles per hour. Before determining that this was a judicial admission which conclusively barred his claim the court evaluated his entire testimony and the testimony of the other witnesses to the occurrence. The court

found that the testimony of the other witnesses was of little assistance to the plaintiff and stated:

"In our judgment, plaintiff's own testimony that he knowingly turned his comparatively slowly moving auto into the lane of traffic occupied by an approaching car then 120 feet or less away and traveling 75 to 80 miles per hour, when viewed in the light of the rest of his testimony and that of the other witnesses, conclusively establishes his guilt of contributory negligence as a matter of law. One cannot knowingly expose himself to danger and subsequently recover damages for an injury which, by the employment of reasonable precaution and circumspection, he might have entirely avoided."

It has been argued that the court in holding that the defendant was entitled to a directed verdict did so despite evidence favorable to the plaintiff and that the court passed upon the credibility of the witnesses. The court did find the testimony of two of the plaintiff's witnesses intrinsically improbable: that the story of one required from the defendant's car a speed of at least 150 miles per hour and that the story of the other also made it travel at an impossible rate of speed. The court, however, appraised the testimony of these and the other witnesses not in relation to the standard for a directed verdict, but to see (under the rule of McCormack v. Haan, 20 Ill2d 75, 169 NE2d 239) if their testimony exculpated the plaintiff from his judicial admission of negligence. Indeed the court, instead of deviating from the standard, reaffirmed it by stating:

"In determining whether defendants' motion for a directed verdict should have been allowed, all of the evidence, when viewed most favorably to plaintiff, must totally fail to establish one or more essential elements of the case."

342

The same test was applied four months later in the case of Jines v. Greyhound Corp., 33 Ill2d 83, 210 NE2d 562 (1965). The court was again considering a case in which the defendant urged that the plaintiff was guilty of contributory negligence as a matter of law. The automobile in which the plaintiff was riding stalled on a well-traveled thoroughfare. He and the other occupants got out of the auto, but the plaintiff reentered it. The testimony was in conflict whether the auto's lights were on, whether a flare had been lighted or if anyone was flagging traffic at the time he got back in the auto and while he remained there. The court found that although the plaintiff left a place of comparative safety for one of danger he did so for reasonable purposes, and that it could not be held that his reentry was an act of contributory negligence as a matter of law. In so finding, the court reenunciated the rule of law that:

"In determining whether plaintiff was contributorily negligent as a matter of law, the testimony favorable to the plaintiff must be taken as true."

 If the present case had gone to the jury and if the jury had returned a verdict for the plaintiff the trial court certainly would have set it aside as being against the preponderance of the evidence. In view of this it may have seemed useless to the court to take time for arguments, instructions and jury deliberation, but we believe the time necessary to complete the case would have been a small price to pay for following the law. The court had appropriate power to deal with any eventuality, but it had no authority to prematurely intervene at the time and in the manner it did.

There is a temptation in a case such as this, where the evidence weighs heavily in one party's favor, to cut through the restraints imposed by those fundamental principles which protect the right of the opposite party to have a jury pass on his case. This is especially so

if one is impatient with the delays the jury process entails. Although it may appear desirable in a particular case to relax the time-honored and hundreds-of-times confirmed principles it cannot be done without undermining them. It is an old, legal truism that "hard cases make bad law." For a reviewing court to relax the long-settled standards of proof in a hard case would encourage further relaxation; it would be an invitation to trial judges to weigh evidence and determine credibility. Instead of the tried, sound, and clear-cut standards that now prevail there would be substituted indefinite and variable ones. This inevitably would lead to more summarily directed verdicts and to more appeals.

We cannot place our approval on the action of the trial court. The judgment will be reversed and the cause remanded.

Reversed and remanded.

SULLIVAN, P. J., concurs.

SCHWARTZ, J., dissenting:

The statement of facts given in the majority opinion is in general accurate. It may be emphasized that the fellow employee who was a passenger of plaintiff did not appear at the trial, and that plaintiff was the sole witness in her behalf. Also, defendant's testimony that during the half-hour period he remained at the scene, the lights were stuck at green for north-south traffic and at red for east-west traffic was supported by the testimony of two disinterested police officers that this was so not merely for a few minutes, but for hours before and after the occurrence. Plaintiff may have been the victim of an error of perception in her momentary glance at the signal lights, but this is hardly possible in the case of defendant and the officers who had repeated chances for observation and who would clearly

344

be guilty of perjury if their testimony was false. There is no room left for doubt as to which car in fact had the green light. Without observing the witnesses, the majority agrees with me that the essentials of the case are so strong that, as they put it, "If the present case had gone to the jury and if the jury had returned a verdict for the plaintiff, the trial court *certainly* would have set it aside as being against the preponderance of the evidence." (Emphasis added.) They might well have added that if the trial court had not so held, the Appellate Court on appeal would have set it aside as against the manifest weight of the evidence. It would appear to be an incredibly foolish requirement that such a case need go to the jury, whose verdict if for plaintiff would have to be set aside as against the preponderance or the manifest weight of the evidence. Yet the position taken in the majority opinion is not without support in law. It has long been the rule that a verdict shall not be directed when there is any evidence which taken alone with all reasonable intendments would support a verdict for the party opposing the motion. In my opinion the rule has no sound basis in history or in logic, and the Supreme Court of this state has departed from it, without specifically formulating a new rule, as will be presently shown.

The majority opinion seems to be based on three propositions: 1, the modification of this rule as implied in the trial court's ruling would constitute an invasion of the right to a jury trial; 2, such a changed rule would be hard to administer and would cause a flood of appeals; and, 3, the Supreme Court's recent decisions do not, as I think they do, indicate that the rule has already been abandoned.

The supposed invasion of the right to trial by jury must be analyzed in the light of the history of that institution, which reveals that at all times since its inception, the jury has been subject to controls at the hands of the

court. The jury began as a body of witnesses whose personal knowledge might aid the judge whose responsibility it remained to decide the case. The jury gradually became the trier of fact, but remained subject to a variety of judicial controls to keep its deliberations within bounds. The rules of evidence are at hand to keep irrelevant or prejudicial data from the jury's consideration, and there are two devices to prevent entry of judgment upon verdicts that might be based on insufficient evidence. These are the direction of verdicts (including entry of judgment notwithstanding the verdict) and the setting aside of a verdict and the granting of a new trial. Although the purposes of each are similar, the standards are not identical. If the trial court concludes that a given verdict is against the preponderance of the evidence, it may on motion set aside the verdict and grant a new trial. If it concludes that damages awarded are excessive, denial of a motion for a new trial may be conditioned on plaintiff's consent to a remittitur. The denial of a motion for a new trial is reviewable on appeal from the judgment entered, and the reviewing court may reverse and remand for new trial if it concludes that the verdict is against the manifest weight of the evidence. This difference presumably reflects the advantage which the trial judge has in evaluating the evidence firsthand, rather than from the cold record. The granting of a new trial is now reviewable by leave to appeal, and the question on review is whether the trial court erred in its application of the preponderance of the evidence test.

The standard with respect to directing verdicts (as well as for entering judgments notwithstanding the verdict) has been that a verdict should not be directed if there is any evidence which taken alone with all its reasonable intendments would support a verdict for the party opposing the motion. The same standard is applied on review. In many decisions this has been construed

346

to mean that only favorable evidence should be considered and all other evidence should be ignored. Otherwise, as the argument runs, the judge would be balancing the evidence and to some degree finding facts. Such weighing of the evidence is said to be permissible when a new trial is granted because the losing party is given a "fresh panel." Assuming that there would be no changes in the evidence at the new trial, and the new panel found as did the first one, the court would again have to set aside the verdict, and so on, ad infinitum, except as courts or statutes have put a limit on the number of trials.

Appellate courts in Illinois from early in the state's history had power to reverse judgments based on jury verdicts without remanding for a new trial, even where the state of the evidence would not have justified the trial court in directing a verdict under the prevailing rules. In Borg v. Chicago, R. I. & P. R. Co., 162 Ill 348, 44 NE 722 (1896) the Supreme Court held that reversing without remanding in such circumstances did not invade the constitutional province of the jury, and said:

> "We have seen that the right of trial by jury as it was enjoyed at the time of the adoption of the present constitution [1870] was not the right of an indefinite number of jury trials in the same cause, where an Appellate Court, on a review of the case, should find that a recovery would be merely a perversion of justice. Such right of trial by jury was never deemed to be invaded by the reversal of a cause without remanding it for another trial. Parties still have the right to submit controversies of fact to the consideration of a jury, and the successful party gains all the advantages and benefits following a verdict . . . arising from superior opportunities to judge of the credibility of witnesses. But when, with all the advantages accorded to them, it

appears to the Appellate Court that there can not be a recovery which should be allowed to stand, no constitutional right is invaded by a refusal to remand the case for successive trials which must necessarily be followed by successive refusals." (Pages 355, 356.)

This case was the controlling authority on the subject for almost a generation, until it was overruled by the court in Mirich v. T. J. Forschner Contracting Co., 312 Ill 343, 143 NE 846 (1924). In that case the court concluded that the history of appellate practice was misread in Borg and held that the Appellate Court may not weigh the evidence in reversing *without remanding*. The court's reasoning was as follows:

"It has always been recognized that for a trial court to weigh and determine conflicting evidence and direct the jury what verdict to render would be a direct violation of the constitutional right of trial by jury. The parties are entitled, under the constitution, to have the facts passed on by a jury. If the legislature cannot authorize the trial court to take a case from the jury where the evidence as to the truth of the facts alleged is conflicting, and render judgment, how can it confer that power on the Appellate Court?" (Page 356.)

No authority whatsoever was advanced for the central assumption that the then prevailing rule for directing verdicts rested on the constitutional basis.

Meanwhile, a short-lived line of authority parallel to the Borg case flowered and withered in a series of cases between 1898 and 1915, where it was held that after several trials followed by appeals and reversals on the ground that the verdicts were against the weight of the evidence, the facts should be found by the Appellate Court on appeal and judgments entered. Bandy v. Litchfield & Madison R. Co., 196 Ill App 560; Huchette v.

348

Williamson County Coal Co., 188 Ill App 321; Dick v. Swenson, 137 Ill App 68; Freeland v. Hughes, 120 Ill App 109; Eveland v. Van Dyke, 78 Ill App 410. From 1845 to 1933, the Civil Practice Act provided that no more than two new trials could be granted to the same party in the same cause. Illinois Rev Stats, c 110, § 77 (1931). But this provision was rendered ineffective by a case holding that it applied only to trial courts and not to appellate courts, Illinois Cent. R. Co. v. Patterson, 93 Ill 290, and it was removed from the act in the course of the 1933 revisions. The directives of the constitution in this area, as interpreted by our courts, are not entirely clear, but I do not perceive any substantial barrier to changing the present rule for directing verdicts.

The majority fears that a departure from the past rule would be unworkable. The fact is that for many years there have been jurisdictions in which the trial judge is granted a wider discretion. In the federal courts, for example, "a verdict will normally be directed where both the facts and the inferences to be drawn therefrom, as supported by the overwhelming weight of the evidence, point so strongly in favor of one party or the other that the court feels reasonable men could not possibly come to a contrary conclusion." 5 Moore ¶ 50.-02, at 2314 (2d ed 1964). See Comment, 42 Texas L Rev 1054 (1964); Comment, 107 Pa L Rev 217 (1958) (and cases and statutes there cited). The standard employed in some federal circuits and in several states is that a verdict may be directed whenever on motion it would be the duty of the court to grant a new trial. Jones v. J. P. Stevens and Co., Inc., 328 F2d 428 (CA 5th, 1964); In re Sinift's Estate, 233 Iowa 800, 10 NW 2d 550, 554 (1943); Potter v. Robinson, 233 Iowa 479, 9 NW2d 457, (1943).

In other jurisdictions, direction of the verdict is permitted when the evidence is in a state of extreme imbalance; that is to say, where a verdict in favor of one

party would be supported by the overwhelming weight of the evidence. This is the standard employed in Minnesota, as ably expressed in Hanson v. Homeland Ins. Co. of America, 232 Minn 403, 45 NW2d 637 (1951). There the defendant insurance company denied liability on a property loss policy, challenging the plaintiffs' ownership of a used commercial trailer that had been stolen. The plaintiffs established by overwhelmingly convincing evidence that the trailer had been effectively transferred to them as a trade-in on a new trailer. The defendant offered only a proof of loss letter, written by its agent, but signed by plaintiffs' agent, which asserted that the trailer had been left "on consignment for sale." This letter standing alone as evidence might have justified a verdict for the defendant. In affirming judgment on a directed verdict for the plaintiffs, the court stated the Minnesota rule, which is similar to ours, but made the following qualification:

> "[I]f the evidence, *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict . . . even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary. Not every conflict in evidence gives birth to a jury question." (Page 638.)

By the same token, the court further said that credibility need not be accepted "where the testimony of a witness is absolutely impossible either physically or morally; or where the evidence presented by a party is so unreasonable and inconsistent and so opposed by undisputed and independent evidence as to be wholly incredible and unworthy of belief." Accord: Continental Bank & Trust Co. v. Stewart, 4 Utah2d 228, 291 P2d 890, 892 (1955).

It appears to me that the present rule in our state is characterized by a singular lack of logic. The test—

whether there is any evidence standing alone that would support a verdict—probably stems from now obsolete rules of pleading which required the movant to accept the opponent's case as true. Certainly no worthy aims are served by limiting judicial consideration to favorable evidence when a directed verdict is in question. The limitation requires a feat of mental insulation almost unknown in ordinary affairs and its folly has been eloquently stated: "[W]eak evidence, when viewed alone, may appear substantial, but when viewed in the light of other evidence, may practically disappear. A candle lighted in a dark hall may be clearly visible and give a welcome glow until powerful arc lights flood the hall with light." Blume, Origin and Development of the Directed Verdict, 48 Mich L Rev 555, 577 (1950).

It is argued that such a change might cause a flood of appeals from decisions directing verdicts and that it is better to allow the case to go to the jury, which may be expected to do the intelligent thing. If this argument has any merit, it would counsel entering judgment notwithstanding the verdict, instead of directing the verdict. On the other hand, there is nothing to prevent appeals from unfavorable jury verdicts, even where the evidence leaves little room for doubt that the verdict was right. Appeals may also be taken from denials of motions for a new trial. The fear that there would be more appeals from cases disposed of by directed verdicts than from those disposed of by other measures is groundless. Moreover, the state of our appellate docket does not present vital social problems, but the state of the docket of the Circuit Court of Cook County does. How many of these backlogged cases were brought merely for purposes of settlement may only be a matter for conjecture, but it is more than conjecture to suppose that many cases now clogging the docket would never have been brought if the plaintiffs knew that verdicts would be directed in weak or frivolous cases.

The instant suit grows out of an accident which occurred twelve years ago. The writer of this opinion has recently filed an opinion in a case based on an accident which occurred eleven years ago (Sobina v. Busby, 62 Ill App2d 1, 210 NE2d 769) and still another opinion based on an accident which occurred fourteen years ago (Noe v. Chicago & Great Western Ry. Co., 71 Ill App 2d 347, 219 NE2d 111, filed December 9, 1965). I have not pursued this research further out of a sense of embarrassment for my profession.

The third premise of the majority opinion is that affirmance in the instant case would depart from precedent. The Supreme Court of this state, while not formally abandoning the rule that only favorable evidence may be considered in determining whether a case should go to the jury, has, I think, departed from it in a number of cases, and has based its decision on the *overwhelming weight of the evidence*.

In Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 147 NE2d 376, the issue was whether a verdict should have been directed for the defendant. The case involved an accident at a railroad crossing. The plaintiff testified that he was driving a truck and as he approached the crossing, he looked both ways and, seeing no train, proceeded across and was struck by the defendant's train. The plaintiff offered a plat and a profile map, of stipulated authenticity, to support the existence of a hollow which he claimed obstructed his view. Against this, the defendant under stipulation introduced eight photographs which clearly indicated that from the elevated seat of a truck the view was unobstructed. On the basis of the plaintiff's evidence standing alone, there was an issue for the jury, but the court, after stating that it had "meticulously examined" the photographs, held that the plaintiff failed to show due care; that is, it gave weight to the overwhelming evidence offered by the moving party.

352

In Carter v. Winter, 32 Ill2d 275, 204 NE2d 755, the court affirmed an Appellate Court decision (50 Ill App2d 467, 200 NE2d 528) reversing, without remanding, a judgment for the plaintiff, and held that the defendant's motion for a directed verdict should have been granted. An automobile driven by the plaintiff, carrying his wife and child, was struck from the rear by the defendant's automobile as the plaintiff's vehicle moved from a private driveway onto Route 66, a high-speed, four-lane highway. The chief issues of fact were the speed of the defendant's car and the care with which the plaintiff entered the highway. The plaintiff, his wife and his brother testified in sum that the plaintiff stopped at the edge of the road, saw the defendant's car about a quarter mile distant, proceeded directly across the northbound lanes, noticed the defendant's southbound car closing in at about 80 miles an hour, and, entering the southbound lanes, accelerated to 35 miles an hour before the impact. The brother claimed to have witnessed the accident from his home adjoining the highway, but admitted that he did not then go to his brother's assistance. In a pretrial deposition and in answer to interrogatories, the plaintiff described his brother as a *post-occurrence* witness. The defendant's chauffeur and a passenger both testified that their constant speed was 50 to 55 miles an hour when the plaintiff pulled into their lanes about 35 yards ahead. A north-bound truck driver testified that the plaintiff's car did not stop at the roadside, but slanted without stop across the northbound lanes, leaving visible wet tire marks. He estimated that as the plaintiff's car crossed the center lines, it was fifty feet from the defendant's car. The Appellate Court held that the issue was properly submitted to the jury since there was some evidence on the issues of negligence and contributory negligence, but that the verdict should be set aside since the manifest weight of the evidence proved Carter guilty of contributory

negligence. However, it reversed without remanding on the basis of a separate ground not passed upon by the Supreme Court. That court affirmed the order of reversal, but held that a verdict should have been directed because *"all of the evidence,* when viewed most favorably to plaintiff" failed to establish freedom from contributory negligence (p 282) (emphasis added); that is, the court based its decision on all the evidence, taking into account the convincing testimony of the disinterested truck driver, which emphatically outweighed that of the plaintiff and his wife as to the manner of entering the highway, and the impeaching evidence that undermined the brother's claim that he witnessed the accident.

The majority contends that the court in Carter followed the orthodox rule and consulted other unfavorable evidence only in an attempt to exculpate the plaintiff from a judicial admission of his contributory negligence. The Supreme Court put it this way:

> "[P]laintiff's own testimony that he knowingly turned his comparatively slowly moving auto into the lane of traffic occupied by an approaching car then 120 feet or less away and traveling 75 or 80 miles per hour, when viewed in the light of the rest of his testimony and that of the other witnesses, conclusively establishes his guilt of contributory negligence as a matter of law." (Pages 283, 284.)

If the court were following the old rule that only evidence favorable to the plaintiff could be considered, the result in the Carter case could not be rationally sustained. The plaintiff did not testify that when he originally entered Route 66, he knew the defendant's speed. All he said was that he saw the defendant 400 yards away. At that distance a jury could have found that the defendant's speed could not be gauged and that it was not negligent at that time to enter the highway.

354

Then, according to the plaintiff's testimony, as he had crossed the northbound lanes and was entering the southbound lanes, he realized that the defendant was approaching at 75 to 80 miles an hour. The question then arises as to what a careful driver should do in such a situation. He cannot very well stop athwart the center line (there was no median strip) or he may be struck by the northbound traffic. We know that at least one northbound truck was approaching. If these facts were accepted as true, the court must have understood that a jury might reasonably have concluded that the most reasonable course for the plaintiff was to proceed into the outside lane and thus give the defendant's speeding car a chance to pass in the normal passing lane. The answer is that these facts were not accepted as true. When the court looked beyond the plaintiff's testimony to the other testimony, it did not consider merely evidence favorable to plaintiff, but explicitly (pages 282, 283) considered all the evidence, favorable and unfavorable. The court then must have concluded that in the light of all the evidence, the favorable evidence failed to support the plaintiff's case.

Further supporting this conclusion is the court's use of McCormack v. Haan, 20 Ill2d 75, 169 NE2d 239, discussed in the majority opinion. That case held that a party's judicial admission should not be deemed conclusive against him without an examination of the rest of his testimony and all the other evidence to see whether the effect of the admission may not be mitigated or explained away. In McCormack, the plaintiff was a passenger in a car driven by defendant's decedent, which was struck as it entered a preferential highway. The plaintiff testified that the car stopped at the stop sign controlling the intersection, but the occupants of the oncoming car testified that her car did not stop. The language of the complaint charged wilful and wanton misconduct by the driver, based in part on the charge that

■■■■■■■■■

he did not stop. This was read to the plaintiff and she was asked whether she made that charge. She answered no, and the court held that that answer was not a judicial admission because it had to be construed in the light of all of her testimony and the testimony of the other witnesses. The process of looking to other evidence is not properly used to *establish* an admission, but to see whether what appears to be an admission may not be explained away. In Carter v. Winter, as we have seen, the plaintiff's own testimony hardly constitutes an admission of his negligence. The purpose of considering the testimony of all the other witnesses was not the rehabilitation of the plaintiff's testimony, as was done in the McCormack case. It was the undermining of that testimony which was considered insubstantial because outweighed by the overwhelming weight of the evidence.

Jines v. Greyhound Corp., 33 Ill2d 83, 210 NE2d 562 (1965) also referred to in the majority opinion, in no way qualifies what the Supreme Court did in the Tucker and Carter cases. There, the question was whether a car stalled on the highway at night was adequately lighted, and whether the plaintiff was negligent in temporarily reentering the car shortly before it was struck by the defendant's bus. There was nothing inherently incredible about testimony that the car was lighted and marked by flares, and this was in part supported by a disinterested witness. The case did not present the problem contained in the Tucker case, the Carter case, and the instant case, that of evidence, substantial when viewed alone, but incredible in the light of all the evidence.

There is no sound reason why a case should go to the jury where the success of one party would depend on a verdict contrary to the overwhelming weight of the evidence. In my opinion this is the rule to be drawn from the Tucker and Carter cases. In the instant case

356

the plaintiff's testimony, the sole basis of her case, is so contrary to the overwhelming weight of the evidence that it is unworthy of belief. The trial court did not err in disposing of a case so devoid of merit by means of a directed verdict, and I would affirm the judgment entered thereon.