**Ernest M. Pearson, Plaintiff-Appellant, v. William E. Sutterlin, Defendant-Appellee.**

**Gen. No. 50,758.**

First District.

January 10, 1968.

Rehearing denied and supplemental opinion
February 16, 1968.

Jurco, Damisch & Sinson, of Chicago (Junie L. Sinson and James R. Mitchell, of counsel), for appellant.

Jacobs and McKenna, of Chicago (Royce G. Rowe and Barry L. Kroll, of counsel), for appellee.

TRAPP, J.

In an action for personal injury, the jury found the issues for the defendant. The trial court denied plaintiff's motions in the alternative for judgment non obstante veredicto and for a new trial.

The automobile collision at issue occurred at the intersection of Western Avenue and Catalpa Street. Western Avenue extends north and south and provides three lanes of traffic in each direction. There is a "divider" in the middle of the street described as being 4 feet wide and several inches high. The record contains no statement of the width of Western Avenue, but by scaling upon a photograph in evidence, it appears to be approximately 60 feet wide, so that the distance is about 28 feet between the divider and the curb on each side of that street. Catal-

pa intersects from the west to form a "T" at Western Avenue. The former is described as being 50 feet wide.

Photographs in evidence disclose that as to plaintiff's car, the front bumper is bent back in a sharp angle almost at its middle, while the left front fender is pushed out or torn away. As to defendant's car, the left front fender beginning at the inner left front headlight is creased and driven in.

It is argued upon appeal, that the evidence shows that plaintiff, proceeding north on Western Avenue began his signal for a left turn a block south of Catalpa, that he saw cars south of Bryn Mawr Street, which intersects Western Avenue some 400 or 500 feet north of Catalpa Street; that he started to make the left turn from Western into Catalpa but that defendant's car accelerated at a tremendous rate of speed and struck plaintiff before he could clear the intersection.

There is ample evidence that defendant's Chevrolet had been modified so that it possessed remarkable capabilities for acceleration. There is testimony that it could surpass the performance of Chicago police cars and that it won drag races. The record supports a conclusion that defendant was driving at a speed in excess of the speed limit. Defendant's own testimony is that he did not see the automobile of the plaintiff until he, the defendant, was 60 feet distant from it.

This judgment, however, is affirmed upon a consideration of all of the evidence. The plaintiff testified that he drove north on Western Avenue to a point which, if extended west as a line, would be the middle of Catalpa Street, i. e., he was prepared to turn and enter the north side of Catalpa. He stopped a few seconds, his automobile then being headed north. At that time he first saw defendant's car southbound in the center lane of Western,

150 to 200 feet south of Bryn Mawr. The latter is described as being 400 to 500 feet north of Catalpa. He stated that he was not able to estimate the speed of defendant's vehicle at this point. During cross-examination plaintiff stated that he had his motor running, but that he was not moving because of the confusing speed and that he was afraid to move as he ordinarily would. Plaintiff stated that he looked for pedestrians crossing Catalpa, and then started very slowly, barely moving in low gear, at which time he saw defendant's car 200 feet distant and "coming unusually fast." Plaintiff testifies that he believes that he was "just about moving northwest" when he made this observation, or again that his car faced at an angle northwest. In a discovery deposition about which he was cross-examined, plaintiff stated that his car was partially in the northbound lane on Western Avenue and was just barely moving at a time when plaintiff estimated defendant's speed at 60 miles per hour. Upon cross-examination plaintiff testified that at the time of impact his car was 10 or 15 feet from the line of the west curb of Western Avenue, i. e., it had moved an apparent 13 or 18 feet from the time he had observed defendant approaching unusually fast. Plaintiff, in describing the movement of his car at one point, states that he expected defendant to "by-pass him instead of swerving" to the west. One interpretation of this statement is that he expected defendant to pass to the east, or behind, his car.

A party's own testimony may bar his action. McCormack v. Haan, 20 Ill2d 75, 169 NE2d 239. We have carefully examined all of the testimony given by plaintiff and have appraised it in the light of the testimony of other occurrence witnesses. Robertson, plaintiff's only occurrence witness, testified that he was following some 200 feet behind defendant and that defendant was 75 to 100 feet distant when plaintiff was making a 90-degree turn,

so that his car was facing northwest. He stated that at such time defendant's car was going 45 miles per hour, and thereafter, accelerated rapidly. Lohse, a witness for defendant, testified that defendant was some 50 feet north of the intersection when plaintiff started to turn.

Plaintiff's testimony shows that he started to make a left turn slowly across the path of an automobile first observed approaching at an undetermined rate of speed, and continued the turn, moving slowly as he again observed it approaching at an unusual rate of speed, once stated to be 60 miles per hour while, by his own testimony, the approaching car was then distant 200 feet.

█ This case comes within the ambit announced by the Supreme Court in Carter v. Winter, 32 Ill2d 275, 204 NE2d 755. There the court found contributory negligence as a matter of law. In this case a jury heard the testimony and found against the plaintiff, and the trial court denied post-trial relief.

█ Plaintiff's primary argument urges the error of the trial court in permitting a Chicago police officer to testify as an expert as to where he, the police officer, had "determined" the place of collision between the cars to be relative to the intersection (this was stated to be some 30 feet south of the south curb of Catalpa Street), upon the ground that his qualifications to reconstruct an unobserved collision were not established in the record. We agree that several years of "investigation" of traffic accidents do not qualify one to express a descriptive opinion concerning what transpired when such investigative experience is defined as observing the position of the cars, providing medical attention for injured parties, arranging to have damaged vehicles moved from the traffic lanes, interviewing witnesses, and preparing and filing reports of the event. The "determination" of the place of impact made by the officer is far removed from that stated by all occurrence witnesses, except the de-

103

fendant himself, and it, in fact, taxes this Court's credulity. The evidence, however, is reviewed in the light of plaintiff's version of the events, and we do not reach the issue of the admissibility of the officer's "determination."

The judgment of the trial court is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.

SUPPLEMENTAL OPINION.

We find that in his petition for rehearing plaintiff misapprehended the text of the opinion. The opinion does not say that plaintiff was guilty of contributory negligence as a matter of law. It does say that the verdict of the jury upon the issues of the negligence of the defendant and the contributory negligence of the plaintiff and the judgment entered thereon are affirmed.